O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JON MARK L. C., | Case No. 8:17-cv-01730-KES |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

## I.

## BACKGROUND

On May 6, 2013, Jon Mark L. C. ("Plaintiff") filed an application for disability insurance benefits ("DIB") alleging disability commencing March 25, 2013. Administrative Record ("AR") 232-240. Plaintiff's date last insured ("DLI") was December 31, 2016. AR 20.

On February 18, 2016 and May 18, 2016, an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by counsel,

_____

[1] Effective November 17, 2017, Ms. Berryhill's new title is "Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security."

appeared and testified, as did a vocational expert ("VE").  AR 41-106.

On June 9, 2016, the ALJ issued a decision denying Plaintiff's application.
AR 19-34.  The ALJ found that Plaintiff suffered from medically determinable
severe impairments consisting of stenosis of the lumbar spine with deformity of
exiting L5 nerve roots, allergic rhinitis, and obesity.  AR 22.  The ALJ found the
conditions of sleep apnea, anxiety, and gastroesophageal reflux disease ("GERD")
to be non-severe.  Id.  Despite these impairments, the ALJ determined that Plaintiff
had the residual functional capacity ("RFC") to perform light work with occasional
postural activities.  AR 25.

Based on this RFC and the VE's testimony, the ALJ determined that Plaintiff
could perform his past relevant work as a user support analyst, classified by the
Dictionary of Occupational Titles ("DOT") as skilled, sedentary work.  AR 33.  The
ALJ concluded that Plaintiff was not disabled.  AR 34.

## II.

## STANDARD OF REVIEW

A district court may review the Commissioner's decision to deny benefits.
The ALJ's findings and decision should be upheld if they are free from legal error
and are supported by substantial evidence based on the record as a whole.  42
U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue,
481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such relevant
evidence as a reasonable person might accept as adequate to support a conclusion.
Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir.
2007).  It is more than a scintilla, but less than a preponderance.  Id. (citing Robbins
v. Comm'r of SSA, 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether
substantial evidence supports a finding, the reviewing court "must review the
administrative record as a whole, weighing both the evidence that supports and the
evidence that detracts from the Commissioner's conclusion."  Reddick v. Chater,
157 F.3d 715, 720 (9th Cir. 1998).  "If the evidence can reasonably support either

affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner.  Id. at 720-21.

"A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate nondisability determination."  Stout v. Comm'r of SSA, 454 F.3d 1050, 1055 (9th Cir. 2006).

## III.

## ISSUES PRESENTED

Issue One: "Whether the ALJ failed to give proper weight to treating physicians, selectively rejected favorable medical evidence of record, and failed to support his reliance on non-treating consultants."  (Dkt. 21, Joint Stipulation ["JS"] at 4.)  More specifically, Plaintiff contends that the ALJ (1) failed to give specific, legitimate reasons for rejecting the Medical Source Statement—Physical (AR 800-805) from his general treating physician, Dr. Amirtha Ajit; (2) failed to give specific, legitimate reasons for rejecting opinions by Dr. Ajit and therapist Angela Rhodes that Plaintiff's anxiety causes functional impairments; (3) failed to account adequately for exertional limitations caused by Plaintiff's obesity; and (4) ultimately assessed an RFC unsupported by substantial evidence.

Issue Two:  Whether the ALJ erred in evaluating Plaintiff's subjective symptom testimony.  (JS at 4.)

Issue Three:  Whether the ALJ erred in evaluating lay testimony from treating chiropractor Dr. Glandorf and therapist Ms. Rhodes.  (JS at 4, 37.)

Because Issues One and Three are dispositive, the Court did not address Issue Two.  On remand, the ALJ may wish to consider Plaintiff's other claims of legal error.

3

**IV.**

**OVERVIEW OF PLAINTIFF'S HISTORY**

In June 1990 (at age 25) Plaintiff was working as a long-haul truck driver and injured his back. (JS at 5.) Plaintiff received treatment through workers' compensation. For approximately ten years, Plaintiff regularly visited chiropractor Michael Glandorf. AR 443-643.

After attending some trade school courses, in approximately 2001 Plaintiff obtained a job as a computer technician and repairperson. He worked for a computer manufacturer in technical support for 11½ years until he was laid off in August 2011 at age 46. AR 242-248, 260, 333, 415, 420, 870.

After losing his job, in May 2012 Plaintiff sought psychotherapy with Ms. Rhodes for depression and anxiety. AR 870. Also in May 2012,[2] Plaintiff treated with Dr. Ajit who diagnosed back pain and spasms, anxiety, sleep apnea, elevated triglyceride levels, allergic rhinitis, and obesity. AR 646. At that time, Plaintiff weighed 355 pounds. AR 645-646.

In September and October 2012, in October and December 2013, in June 2014, and again in May 2015, Plaintiff received lumbar epidurals under the supervision of Dr. Donald Ruhland, Plaintiff's pain management specialist.[3] AR 402-407, 674-681, 717-768, 773-791.

On March 25, 2013 (i.e., his alleged onset date), Plaintiff told Dr. Ajit that he felt unable to "do anything" because of his back pain. AR 654. Dr. Ajit noted positive straight leg raising test and lumbar disc displacement. AR 654-655.

---

[2] Plaintiff testified that he has treated with Dr. Ajit since 2000 or 2001 (AR 72), but the record includes treatment notes dating back to 2012. AR 645.

[3] Plaintiff treated with Dr. Ruhland from sometime prior to September 2012 through May 2015. See AR 402 (notes from September 7, 2012 injection, "The patient is known to me from prior L5-S1 epidural injections …."), AR 774 (May 2015 treatment notes).

A May 22, 2014 MRI and x-ray showed a combination of disc disease, facet arthropathy, and ligamentum flavum redundancy, contributing to moderate bilateral neural foraminal stenosis and deformity of the exiting L5 nerve roots, with additional effacement of the right L5 nerve root in the extraforaminal zone. AR 684-687. Plaintiff summarizes these findings as "a herniated disc, strained ligament, and arthritis in the spine, causing bilateral pressure on the nerves." (JS at 7.)

## V.

## DISCUSSION

### A. ISSUE ONE: The ALJ's Evaluation of the Medical Evidence.

#### 1. Rules for Weighing Conflicting Medical Evidence.

"The ALJ is responsible for resolving conflicts in the medical record." Carmickle v. Comm'r of SSA, 533 F.3d 1155, 1164 (9th Cir. 2008). In doing so, the ALJ follows the hierarchy of medical opinion articulated by the Ninth Circuit: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended on April 9, 1996); see 20 C.F.R. §§ 404.1527, 416.927 (weighing medical evidence for claims filed before March 27, 2017).

The opinion of the claimant's treating physician is entitled to the greatest weight because the treating physician is "employed to cure and has a greater opportunity to know and observe the patient as an individual." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (quoting Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)). See also Carmickle, 533 F.3d at 1164 (physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than physicians with lesser relationships) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)).

5

1    "If a treating physician's opinion is well-supported by medically acceptable

2    clinical and laboratory diagnostic techniques and is not inconsistent with the other

3    substantial evidence in [the] case record, [it will be given] controlling weight."

4    Ghanim v. Colvin, 763 F.3d 1154, 1160 (9th Cir. 2014) (quoting Orn v. Astrue, 495

5    F.3d 625, 631 (9th Cir. 2007)); see also 20 C.F.R. § 404.1527(c)(2). "In many

6    cases, a treating source's medical opinion will be entitled to the greatest weight and

7    should be adopted, even if it does not meet the test for controlling weight." Orn,

8    495 F.3d at 633 (quoting S.S.R. 96–2p, 1996 WL 362211, at 4).

9         In weighing a treating physician's non-controlling medical opinion, the ALJ

10   considers the factors set forth in 20 C.F.R. § 404.1527(c)(2)-(6).[4] Ghanim, 763

11   F.3d at 1161; see S.S.R. 96-2p (stating that a finding that a treating physician's

12   opinion is not well-supported or inconsistent with other substantial evidence in the

13   record "means only that the opinion is not entitled to 'controlling weight,' not that

14   the opinion should be rejected.  Treating source medical opinions are still entitled to

15   deference and must be weighed using all of the factors provided in 20 C.F.R.

16   § 404.1527.").  The factors include: (1) the length of the treatment relationship and

17   the frequency of examination; (2) the nature and extent of the treatment

18   relationship; (3) supportability of the opinion; (4) consistency of the opinion with

19   the record as a whole; (5) the specialization of the treating source; and (6) any other

20   factors brought to the ALJ's attention that tend to support or contradict the opinion.

21   20 C.F.R. § 404.1527(c)(2)(i)-(ii), (c)(3)-(6).  A failure to consider the statutory

22   factors in rejecting a treating physician's opinion constitutes reversible error.

23   Trevizo v. Berryhill, 871 F.3d 664, 676 (9th Cir. 2017).

24        "To reject an uncontradicted opinion of a treating physician, the ALJ must

25   _____

26        [4] Section 404.1527 applies to claims filed before March 27, 2017.  Plaintiff
     filed his claim on May 6, 2013, and the ALJ issued his decision on June 9, 2016.

27   (Section 404.1520c applies to claims filed on or after March 27, 2017.  Section
     404.614 explains when an application is considered filed.)

28

provide 'clear and convincing reasons that are supported by substantial evidence.'"

Ghanim, 763 F.3d at 1161(quoting Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)).  The clear and convincing standard required to reject the uncontradicted opinion of a treating physician "is the most demanding required in Social Security cases."  Moore v. Comm'r of SSA, 278 F.3d 920, 924 (9th Cir. 2002).

When another doctor contradicts the treating physician's opinion, the ALJ may not reject this opinion without "providing 'specific and legitimate reasons that are supported by substantial evidence.'"  Ghanim, 763 F.3d at 1161 (citing Ryan v. Comm'r of SSA, 528 F.3d 1194, 1198 (9th Cir. 2008)).  The ALJ can meet this burden by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.  The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct."  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (citations omitted).

However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."  Id.; accord Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible."  Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008).

Additionally, the ALJ accords weight to the opinions of examining, non-treating physicians.  As with the treating physician, the ALJ must present "clear and convincing" reasons for rejecting the uncontroverted opinion of an examining physician and may reject the controverted opinion of an examining physician only for "specific and legitimate reasons that are supported by substantial evidence."  Lester, 81 F.3d at 830-31.

The ALJ accords lesser weight to the opinions of non-examining physicians.

"The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Id. at 831. When combined with other evidence, however, the opinion of a non-examining physician can support a decision to reject the opinion of a treating or examining physician. Id. (citing Magallanes, 881 F.2d at 751-52, summarizing Magallanes as upholding the rejection of treating physician opinion based on non-examining sources where "there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results [an MRI], on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion.").

### 2. Dr. Ajit's Medical Source Statement.

In January 2016, Dr. Ajit prepared a Medical Source Statement—Physical describing Plaintiff's ability to perform work-related activities. AR 800-805. As relevant here, Dr. Ajit opined that in an eight-hour day Plaintiff could sit for a total of four hours, stand for a total of two hours, walk for a total of one hour, and must rest for one hour. AR 801. In contrast, the ALJ found that Plaintiff could sit, stand, or walk for six hours out of an eight-hour day. AR 25. Dr. Ajit also opined that Plaintiff could occasionally lift 10 pounds, but the ALJ found that Plaintiff could occasionally lift 20 pounds. Compare AR 25, AR 800.

Dr. Ajit's opinions were contradicted by the opinions of the three state agency physicians—Drs. McGuffin, Chan, and Hoang—even though they generally relied on the same clinical findings. Because Dr. Ajit's opinion is contradicted, the dispositive question is whether the ALJ gave "specific, legitimate reasons" for discounting Dr. Ajit's opinion. See Lester, 81 F.3d at 830. If the ALJ provided those reasons, then his decision will be upheld so long as it is free from legal error and supported by substantial evidence based on the record as a whole.

The ALJ gave "reduced weight" to Dr. Ajit's Medical Source Statement for the following five reasons: (1) it is inconsistent "with other opinion evidence …

including the assessments of the state agency medical and psychological consultants (see AR 107-115; AR 117-127)" and "the consultative examiner (see AR 871-878…)"; (2) Dr. Ajit "does not appear to be a specialist;" (3) it is inconsistent with Dr. Ajit's own treating notes; (4) it is a "cursory … check-box report" that is "not well supported by the clinical data, progress notes, and overall record"; and (5) it "appears to be tainted by the claimant's objective to obtain a report that states he is disabled …." AR 28-29. The Court considers each of these reasons below.

a. <u>Reason One</u>: Inconsistent with Other Doctors' Opinions.

i. The State Agency Physicians.

Three doctors offered opinions concerning Plaintiff's functional capabilities on behalf of the state: two non-examining physicians, Drs. McGuffin and Chan, and one consultative examiner ("CE"), Dr. Hoang.

On February 27, 2014, state agency physician Dr. McGuffin reviewed the record as it existed at that time and opined that Plaintiff could perform a reduced range of medium work. AR 107-115. Dr. McGuffin noted that Plaintiff had "limited range of motion" of his elbow and cervical and lumbar spine, "mild limited range of motion" of his wrist, and "normal range of motion" of his shoulder, knee, hips, and ankle. AR 110. Additionally, Dr. McGuffin commented that Plaintiff "is noted to have mildly limited range of motion. Normal gait. He doesn't use any assistive device to ambulate." AR 112. On May 5, 2014, state agency physician Dr. Chan similarly reviewed the record as it existed at that time and opined that Plaintiff could perform a limited range of medium work. AR 117-127.

Almost two years later, on April 28, 2016, CE Dr. Hoang conducted an orthopedic consultation. AR 871-878. Dr. Hoang's observations of Plaintiff include: "[he] is a well-developed, obese male in no acute distress[]" (AR 872); "[n]ormal station & gait and balance[]" (id.); "[i]nspection of the cervical spine revealed normal attitude and posture of the head[]" (AR 873); "[p]alpation elicited

tenderness over the bilateral para-cervical musculature right > Left[]" (id.);

"[i]nspection of the thoraco-lumbar spine revealed no significant deformity and no pelvic tilt or listing[]" (id.); "tenderness over the right paraspinal muscles[]" (id.); no muscle spasm in the cervical or thoraco-lumbar spine "visibly or palpably appreciated" (id.); and a "full" "active range of motion" (or "AROM") in all areas, except "limited in Flexion." AR 873-874. Dr. Hoang found Spurling's test, Valsalva's maneuver, and the supine and seated straight leg raising tests negative. AR 873.

Based on these observations, Dr. Hoang concluded in his functional assessment: "[n]o clinical findings of radiculopathy[]" (AR 874); "no clinical findings suggestive of nerve root compression" (id.); "[n]eurological deficits, muscular atrophy and spasm were not appreciated[]" (AR 875); "[w]ell preserved" basic hand functions (id.); and "[n]ormal alignment without deformities" and full "AROM" in all major joints. Id. Dr. Hoang directed the Department of Social Services to refer to his Medical Source Statement for "detailed functional impairments." Id. The Medical Source Statement, however, is incomplete: it appears to be missing five pages[5] and, in the two pages that are included, Dr. Hoang does not support his check-box assessment of Plaintiff's functional capabilities with any explanation or medical findings, as instructed. AR 877-878. The two-page Medical Source Statement only addresses Plaintiff's lifting/carrying and

_____

[5] The last page of Dr. Hoang's Medical Source Statement includes the notation "page 7/12" in the top right corner, indicating that five additional pages should have been included. This is consistent with the fact that the Medical Source Statement omits any mention of a number of functional capabilities that are typically assessed in such Statements. AR 878. Dr. Ajit's Medical Source Statement includes the following sections that are omitted from Dr. Hoang's Medical Source Statement: use of hands, use of feet, postural activities, hearing/vision, environmental limitations, activity capabilities, and several open-ended questions at the end of the Medical Source Statement. Compare AR 800-805 [Dr. Ajit], AR 877-878 [Dr. Hoang].

sitting/standing/walking capabilities, without any explanation for the capability assessment.  AR 877-878.  Accordingly, Dr. Hoang's assessment of Plaintiff's functional capabilities appears inconclusive.  Still, the ALJ describes it as a "medium-level assessment." [6]  AR 29.

The ALJ found that Dr. Ajit's opinions were not "consistent with other opinion evidence in the file, including the assessments of the State Agency medical and psychological consultants (see AR 107-115; AR 117-127)—not to mention that of the consultative examiner (see AR 871-878), whose somewhat problematic report I address in due course …."  AR 28.

The ALJ "gave partial weight to the assessments of the [non-examining] State Agency medical consultants—who opined that the claimant has even fewer restrictions [than the ALJ's RFC] and can perform medium-level work activities" because "they reviewed evidence—some of which was likely unavailable to other sources—in the context of their special training in applying the Social Security disability rules and regulations …."  AR 29.

Also, the ALJ gave "only partial weight to the consultative examiner's medium-level assessment (see AR 871-878) for similar reasons, as well as others specific to that examiner—I find that the residual functional capacity defined therein is in line with the overall evidence … and the opinion evidence in this case

_____

[6] It appears that the ALJ describes the assessment as "medium-level" based on the limited information provided.  At the hearing, the ALJ asked the VE a hypothetical from the Disability Determination Services with "elements of the CE [incorporated] into it … to the extent that they were consistent."  AR 97.  This hypothetical included all assessments that Dr. Hoang did provide in his Medical Source Statement: Plaintiff's lifting/carrying and sitting/standing/walking capabilities.  The ALJ added: "[the ability] to frequently climb ramps and stairs; occasionally climb ladders, ropes and scaffolds; frequently kneel, crouch and crawl; occasionally stoop" (AR 97)—assessments Dr. Hoang's incomplete Medical Source Statement does not address.  The VE assessed this hypothetic as describing "medium work." AR 97-98.

has been given significant weight to the extent that it is in keeping therewith." Id.
In a footnote, the ALJ explained his reasons for giving only partial weight to Dr.
Hoang's assessment:

> [T]he copy of the consultative examiner's report on file in this matter
> appears to be incomplete (see AR 871-878), for reasons that frankly escape
> me—and I note in this regard that the preparation of the case file is
> accomplished via an administrative or clerical process that is not under my
> control—and while I note further that the claimant's attorney did not object
> to the admissibility of this report when given the opportunity to do so on the
> record at the May 18, 2016 hearing—nor does it appear that the claimant has
> ever objected to the report's incompleteness—I recognize that both the
> claimant and his attorney raised concerns about this examiner's qualifications
> and other issues as the hearing ….

Id. at n.1.

At the hearing, Plaintiff testified about several issues with Dr. Hoang's
medical assessment. AR 85-91. First, Plaintiff described Dr. Hoang's office:

> Well, I didn't think it was a very professional facility because they had like—
> for the name of their facility they just had it written on a piece of computer
> paper and taped up above the receptionist the name of the company and then,
> you know, it was just like there was no pictures on the walls, no nothing, no
> doctor certifications like you normally see in a doctor's office. … It was
> like a medical office, but it was really rundown and, you know, even the
> elevator kind of was scaring me because it was making noises and jerking up
> and down ….

AR 85-86. Plaintiff's attorney submitted a photograph Plaintiff captured of the sign
he described. AR 86, 393 [paper sign with handwritten words "MCR Medical"].
Additionally, Plaintiff testified about Dr. Hoang's examination:

> I guess it was hard for me to understand him, you know. [Attorney asks if he

had an accent.] Yes, and it was hard for me to understand him and I don't

think we really communicated well and his exam was very, very limited and

he didn't even make me take my shirt off and I just didn't— [Attorney asks if

Dr. Hoang observed Plaintiff's back.] No. [Attorney asks if Dr. Hoang

looked at any of Plaintiff's records.] I did provide him with a copy of my

MRI. … He seemed to look at it but, I mean, it wasn't—I don't think he

really read it because he didn't really have time, it didn't seem like. He just

kind of thumbed through it real quick and then he just talked to me and asked

me questions and examined me and I was out of there in like five minutes.

… So I just didn't think it was a very thorough exam, you know ….

AR 86-87. Plaintiff further testified:

I didn't feel like he understood me and it was hard for me to understand him

because of … a language barrier and I was kind of concerned because the girl

that came out before me was crying … I just didn't really have, you know, a

good opinion about the examination as far as the thoroughness and that we

communicated effectively with each other.

AR 90.

The ALJ also questioned Plaintiff about Dr. Hoang's examination. The ALJ

asked if Dr. Hoang examined Plaintiff's shoulders, elbows, wrists, and hands;

Plaintiff testified that Dr. Hoang only asked Plaintiff to push against his hand and

did not inspect Plaintiff's elbows or shoulders. Id. The ALJ asked if Dr. Hoang

took any measurements of Plaintiff's thighs, calves, and upper and lower arms;

Plaintiff testified that the receptionist did. AR 90-91. Finally, the ALJ asked if

Plaintiff discussed his medical history with Dr. Hoang. AR 91. Plaintiff testified,

"Yes, I did. … But I'm not sure, you know, how much of it really—you know, I

explained it to him and told him about when the injury occurred and I gave him a

copy of the MRI …." Id.

During the hearing, Plaintiff's attorney submitted to the ALJ documents

reflecting Dr. Hoang's credentials.  AR 88.  Plaintiff's attorney explained, "He [Dr. Hoang] purports to be specializing in orthopedics, but his training appears to be in radiology.  I mean, he's not board-certified and his license—he is California-licensed, but his training is in Vietnam quite sometime back and not really relevant to the field of specialty that the Court requested."  Id.  The documents reflect that Dr. Hoang is licensed in the state of California and graduated from the University of Saigon Faculty of Medicine in January 1967.  AR 394.  An attached webpage indicates that this University is in Vietnam.  AR 396.  The documents further indicate that Dr. Hoang's area of practice is radiology (not orthopedics), he is proficient in Vietnamese, and he has no board certifications in any specialty area.  AR 394.

ii.     Other Medical Records Included in the Administrative Record.

Plaintiff argues, "Dr. Ajit's report is based on Plaintiff's treatment not only with Dr. Ajit, but on treatment Dr. Ajit reviewed and considered including chiropractic treatment, epidural injections, medication, and referral for surgical evaluation.  The only 'inconsistency' identified in the decision is the ALJ's opinion that the single report by the non-treating, one-time CE and opinion by the State Agency non-examining, non-treating physicians, is more reliable (AR 27-28).  This is not an inconsistency, let alone an inconsistency sufficient to support rejection of a treating doctor."  (JS at 10.)  Plaintiff further argues, "Dr. Ajit's treatment is consistent with her own treatment, Dr. Glandorf's, and Dr. Ruhland's, and with the evaluation by QME orthopedist Dr. Wilker …."  (JS at 23.)

Dr. Glandorf, treating chiropractor and workers' compensation Qualified Medical Examiner (QME), treated Plaintiff from February 2004 through August 2015.  AR 408-643, 688-716, 792-799.  During this decade of treatment, Plaintiff's symptoms waxed and waned in intensity, and Plaintiff consistently took medication.  Id.  For example, Dr. Glandorf's reports indicate that Plaintiff's back

pain ranged from "sore and restricted" (AR 501) to "a charly horse in right TL spine" (AR 507) to "Low back is bad and he ended up in the ER 2 weeks ago" (AR 511) to "Low back is sore but not as bad as it has been." AR 513.

Dr. Ruhland, a pain management specialist who administered Plaintiff's epidural injections, noted that the injections treated Plaintiff's "severe low back pain with bilateral lumbar radiculopathy exacerbation," "lumbar degenerative disk disease," and "disk protrusions." AR 402-407, 674-675, 678-681, 717-768. In 2012, Dr. Ruhland reported that Plaintiff responded well to the injections but "still has bilateral symptomatology." AR 406. In 2013, Dr. Ruhland reported that Plaintiff had repeatedly returned for injections and experienced worsening symptoms. AR 674, 676, 678, 680. In June 2014, Dr. Ruhland reported that Plaintiff "is now suffering substantially increased symptoms in the back and down the legs reaching 10/10 on the VAS scale."[7] AR 724. In May 2015, Dr. Ruhland also observed Plaintiff "is now suffering increasing symptomology …." AR 785.

Dr. Wilker, an orthopedic surgeon, examined Plaintiff and reviewed his lumbar MRI in January 2015. AR 769-772. Dr. Wilker reported that the MRI showed "[a] high intensity zone in the posterior annulus as well as modic changes." AR 771. Dr. Wilker concluded that Plaintiff was a candidate for decompression and fusion back surgery or, if Plaintiff opted out of surgical intervention, possibly an annual epidural injection would provide some relief. Id.

In sum, Dr. Ajit's opinion is inconsistent with the medical opinions of the three state agency physicians—but not the medical records of Drs. Glandorf, Ruhland, and Wilker. The fact that the three state agency opinions contradict Dr. Ajit's assessment of Plaintiff's functional capabilities obliged the ALJ to provide a specific and legitimate reason supported by substantial evidence in the record for

_____

[7] The "VAS scale" seems to refer to the visual analogue scale, which measures pain intensity.

15

discounting Dr. Ajit's opinion.

          iii.    Whether Inconsistency with CE Dr. Hoang's Assessment Constitutes a Specific and Legitimate Reason.

Sometimes, the opinion of an examining, non-treating physician can constitute "substantial evidence" depriving the opinion of a treating physician of its controlling weight and supporting a specific and legitimate reason for discounting the contradicted opinion of the treating physician. Orn, 495 F.3d at 632-33. "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" Id. at 632. However, "when an examining physician provides 'independent clinical findings that differ from the findings of the treating physician,' such findings are 'substantial evidence.'" Id. These independent clinical findings can be either "(1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not herself considered." Id. (citations omitted).

Dr. Hoang's medical records indicate that he did perform several medical tests on Plaintiff, including Valsalva's maneuver, Spurling's test, and straight leg raising tests. AR 873. Given the totality of the circumstances, however, the Court finds the results of these tests too unreliable to constitute substantial evidence.[8] The

_____

[8] Even if reliable, it does not seem that these tests are independent clinical findings constituting substantial evidence. Dr. Ajit also conducted straight leg raise tests and found them positive. See, e.g., AR 655. Additionally, Dr. Hoang used Valsalva's maneuver and Spurling's test to assess Plaintiff's cervical spine. AR 873. The results of these tests would not undermine Dr. Ajit's functional assessment, because Dr. Ajit opined that Plaintiff's lumbar spine causes his functional impairments. (AR 805.) Thus, any inconsistency introduced by these tests does not constitute a specific and legitimate reason to discount Dr. Ajit's functional assessment.

administrative record as a whole does not support a finding that differences between the assessments of Dr. Hoang and Dr. Ajit provide a specific and legitimate reason to discount Dr. Ajit's opinion in favor of that of Dr. Hoang. Plaintiff described a five-minute examination frustrated by a language barrier (AR 85-91); Dr. Hoang's assessment of Plaintiff's functional capabilities is incomplete (AR 870-878); documents submitted by Plaintiff's attorney cast doubt on Dr. Hoang's qualifications (AR 394-398); and Dr. Ajit's opinions are more consistent with the treatment records of Drs. Glandorf, Wilker, and Ruhland than Dr. Hoang's opinions. Thus, the examination of Dr. Hoang does not constitute substantial evidence for the purpose of discounting the contrary opinion of Dr. Ajit.

> iv.   Whether Inconsistency with the Non-Examining Physicians' Assessments Constitutes a Specific and Legitimate Reason.

Non-examining physicians' opinions "with nothing more" cannot constitute substantial evidence to support rejecting the opinion of an examining or treating physician. Andrews v. Shalala, 53 F.3d 1035, 1042 (9th Cir. 1995); Lester, 81 F.3d at 830. However, this does not mean that the opinions of non-examining sources and medical advisors are always entitled to "little" or no weight. Andrews, 53 F.3d at 1041. Reports of a non-examining source "need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." Id.

The non-examining sources, Drs. McGuffin and Chan, conducted their reviews of Plaintiff's medical records on February 27, 2014 and May 5, 2014, respectively. The non-examining sources reached their conclusions before, for example: Plaintiff received the results of his MRI and x-ray, dated May 22, 2014 (AR 682-687); Dr. Wilker conducted his initial orthopedic evaluation of Plaintiff on January 1, 2015, recommending surgical intervention for discogenic back pain (AR 769-772); Dr. Ruhland conducted further pain management treatment, such as the

May 1, 2015 lumbar epidural (AR 773-791); Dr. Glandorf issued updated medical reports from October 2014, July 2015, and August 2015, reporting muscle spasms, pain present "on all planes of motion," and positive Kemp's, Milgram's, and straight leg raise tests (AR 792-799); Plaintiff received further treatment for gastrointestinal issues from March to July 2015 (AR 806-832); and Dr. Ajit provided recent medical records.  AR 833-869.   This list is not exhaustive of all medical records in the administrative record postdating the conclusions of Drs. McGuffin and Chan.

Additionally, the record includes evidence that Plaintiff's symptoms worsened after Drs. McGuffin and Chan reached their conclusions.  See e.g., AR 724 (Dr. Ruhland's June 2014 report that Plaintiff "is now suffering substantially increased symptoms in the back and down the legs reaching 10/10 on the VAS scale."); AR 795 (Dr. Glandorf's August 2015 report that Plaintiff "presents with elevated back pain rated 9/10 that extends to both hips and down the left leg.  He is using his dad's walker and has difficulty ambulating.").  In contrast, the functional assessment of Dr. Ajit is from two years later, 2016—the same year the ALJ issued his decision.  Thus, the conclusions of Drs. McGuffin and Chan—unlike those of Dr. Ajit—do not contemplate the most recent evidence in the record and thus do not accurately capture Plaintiff's functional capabilities at the time the ALJ issued his decision on June 9, 2016.  As such, inconsistency with the assessments of Drs. McGuffin and Chan does not constitute a specific and legitimate reason to reject the opinion of Dr. Ajit.

In sum, per the unique facts of this case, the fact that the three state agency opinions contradict Dr. Ajit's assessment of Plaintiff's functional capabilities does not constitute a specific and legitimate reason, supported by substantial evidence, to reject Dr. Ajit's assessment.

b. Reason Two: Dr. Ajit's Lack of Specialization.

The ALJ afforded the medical opinion of Dr. Ajit reduced weight because,

"Dr. Ajit does not appear to be a specialist—such as an orthopedist who could offer a trained perspective on the nature of the claimant's spinal impairment or a mental health professional who could provide unique insight into his mental issues …." AR 28.

Plaintiff argues, "This criticism is rebutted by Dr. Ajit's extensive treatment and examination of Plaintiff, which includes her review and consideration of Plaintiff's treatment by the workers' compensation chiropractor QME [Dr. Glandorf], the specialist delivering epidural injections [Dr. Ruhland], and the orthopedic surgeon recommending surgery or significant annual epidural injections [Dr. Wilker]." (JS at 10.) Plaintiff also questions the credentials of the specialist, orthopedist Dr. Hoang. (See JS at 9-10, describing his medical office identified by a "half-fallen paper sign," the appointment lasted five minutes, and "his training was in radiology, was taken in Vietnam, was remote in time, and was not relevant to the impairment"); see also AR 85-91, 393-398.

The opinions of specialists are accorded greater weight than those of general practitioners. Garrison v. Colvin, 759 F.3d 995, 1013 (9th Cir. 2014) (finding that because the doctor "is a specialist, his opinion is owed greater weight as a matter of regulation") (citing 20 C.F.R. § 404.1517(c)(5)). This factor alone, however, "does not constitute a sufficient reason for giving little weight to [the treating physician's] opinions …." Price v. Colvin, 635 F. App'x 379, 380 (9th Cir. 2016) (finding the ALJ did not provide specific and legitimate reasons for discounting the opinion of the treating physician where the ALJ noted the physician is not a specialist and the physician's opinion is inconsistent with the claimant's daily activities). Thus, the fact that Dr. Ajit is not a specialist does not alone constitute sufficient reason to discount her opinion; this reason must be viewed in light of other reasons given.

Moreover, the ALJ stated that an orthopedist could provide better insight into Plaintiff's spinal issues than Dr. Ajit—but also recognized that the CE orthopedist, Dr. Hoang, does not have a completed functional assessment in the administrative

record and that Plaintiff had cast doubt on Dr. Hoang's qualifications as an orthopedist. AR 29, 393-398. The ALJ admitted into the record a packet compiled by Plaintiff's attorney showing that Dr. Hoang was trained in radiology—not orthopedics—in Vietnam in 1967 and is not board-certified in any specialty. AR 88, 394-398. Because it does not appear that Dr. Hoang is an orthopedic specialist or that his incomplete functional assessment provided any unique, reliable insight into Plaintiff's spinal issues, Dr. Ajit's lack of specialization does not constitute a reason discount her opinion in favor of that of Dr. Hoang. This reason is further weakened by the fact that, as described previously, Dr. Ajit's opinion is consistent with those of other examining specialists, Drs. Ruhland and Wilker.

        c.  Reason Three: Inconsistency with Own Notes, Exams, and Treatment.

      Legitimate inconsistencies and ambiguities in the treating physician's analysis, or conflicting lab test results, reports, or testimony, can provide sufficient reasons to devalue the doctor's report. Shavin v. Comm'r of SSA, 488 F. App'x 223, 224 (9th Cir. 2012) (citing Matney v. Sullivan, 981 F.2d 1016, 1019-20 (9th Cir. 1992); Lester, 81 F.3d at 831); see also Ghanim, 763 F.3d at 1161 ("A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider."). In considering whether inconsistency between a treating physician's notes and opinion constitutes a specific and legitimate reason for discounting the opinion, the notes "must be 'read in context of the overall diagnostic picture' the provider draws." Ghanim, 763 F.3d at 1162 (quoting Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001)).

      Here, the ALJ found the following inconsistencies:

      Dr. Ajit's progress notes, as discussed further below, reflect largely routine treatment, which tends to undercut the notion that the claimant is as limited as Dr. Ajit suggests given that, if he was, one might reasonably expect to see

more aggressive care. … Indeed, in rather stark contrast to the fairly dire pronouncements in Dr. Ajit's functional assessments, it must be noted that the doctor's actual treatment records repeatedly indicate that the claimant should—and thus presumably can—engage in regular exercise (see, for example, AR 653; AR 837, 841, 849; compare AR 852 ("Regular exercise as tolerated.")), which instructions are at least arguably at odds with the expansive set of limitations set forth in Dr. Ajit's functional assessments. AR 28. In sum, the ALJ identified two inconsistencies between Dr. Ajit's medical opinion and her treatment notes: (1) lack of aggressive treatment, and (2) exercise recommendations.

### i.       Lack of Aggressive Treatment.

Concerning the lack of aggressive treatment, Plaintiff argues that "strong, daily pain medication and epidural injections are not conservative treatment." (JS at 11.) Plaintiff cites Revels v. Berryhill, a fibromyalgia case in which the Ninth Circuit held that the ALJ erred in rejecting the claimant's testimony on the ground that she received "conservative" treatment because "[w]e have previously 'doubt[ed] that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment.'" 874 F.3d 648, 667 (9th Cir. 2017) (quoting Garrison, 759 F.3d at 1015 n.20). Plaintiff also argues that failure to recommend a more aggressive treatment is not alone a legitimate reason to discount a treating physician's opinion. (JS at 11, citing Trezivo, 871 F.3d at 678.)

The record shows that Dr. Ajit prescribed Plaintiff pain medication, ordered that Plaintiff undergo diagnostic imaging, advised Plaintiff to confer with a pain management specialist, and referred Plaintiff to an orthopedic surgeon. AR 644-673, 833-869. The fact that Plaintiff chose to forego surgery and continue epidural injections does not introduce a legitimate inconsistency in Dr. Ajit's medical

opinions.[9]  In fact, referring Plaintiff to a pain management specialist and an orthopedic surgeon is consistent with the opinion that Plaintiff exhibited functional limitations warranting aggressive care.  Thus, Plaintiff's treatment regimen as overseen by Dr. Ajit is not legitimately inconsistent with her medical opinions of Plaintiff's functional limitations.  See Shavin, 488 F. App'x at 224 (9th Cir. 2012) (finding no legitimate internal inconsistency in the treating physician's analysis where the ALJ considered the physician's treatment "comparatively conservative," but the alternative was "drastic, invasive surgery that promised a limited prognosis.").

ii.    Exercise Recommendation.

Plaintiff argues that the ALJ misstated the meaning of Dr. Ajit's recommendation that Plaintiff exercise: "Plaintiff was engaging in therapeutic stretching and limited exercise as tolerated, on the recommendation of his treating physicians.  This is not a factor on which to base criticism of Dr. Ajit's opinion about Plaintiff's RFC."  (JS at 11, citing Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (noting a claimant may perform "activities despite pain for therapeutic reasons, but that does not mean []he could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved.").)  Plaintiff also argues the ALJ failed to describe how Plaintiff's exercise related to his RFC.  (JS at 24-25, citing Trevizo 871 F.3d at 678, 682; Waldon v. Colvin, No. 15-0631, 2016 WL 4501074, at *4 (S.D. Cal. Aug. 29, 2016) ("a social security claimant may engage in exercise for therapeutic reasons despite pain").)

In the context of treating Plaintiff's obesity, Dr. Ajit recommended, "Regular

---

[9]  The decision of Plaintiff to decline surgery does not render Dr. Ajit's treatment records internally inconsistent.  (In contrast, a claimant's decision not to follow or receive recommended treatment can be considered in assessing subjective symptom testimony.  See 20 C.F.R. § 416.930(b).)

exercise as tolerated" and also noted, "Advised low calorie diet and regular exercise."  See AR 653, 837, 841, 849, 852.  In her Medical Source Statement, Dr. Ajit opined that Plaintiff is "unable to sit, stand, or walk for long periods of time" but can walk a block at a reasonable pace and can climb several steps at a reasonable pace using a handrail.  AR 805.  In occasionally recommending that Plaintiff should "exercise as tolerated" to manage his obesity, Dr. Ajit does not legitimately contradict her assessment of Plaintiff's functional abilities; the extent of the prescribed exercise is unspecified, and this recommendation appears in the ordinary context of obesity management strategies.  See Trevizo, 871 F.3d at 677 (the ALJ erred in finding the treating physician's opinion contradicted by his treatment notes, where the opinion assessed functional limitations from her back pain and also counseled her about weight loss, exercise, and diet); Holohan, 246 F.3d at 1205 (the ALJ erred in rejecting the opinion of claimant's treating psychiatrist on the basis that his opinion conflicted with his treatment notes because the treating psychiatrist's "statements must be read in [context of] the overall diagnostic picture he draws").

Thus, the two inconsistencies identified—lack of aggressive treatment and recommended exercise—do not provide a specific and legitimate reason to discount the opinions of Dr. Ajit.

d.  Reason Four: Check-Box Report Lacking Support.

The ALJ found as follows:

Dr. Ajit's more restrictive limitations—which, it must be noted, are set forth in a cursory form that essentially amounts to a check-box report with little in the way of detailed explanation or discussion of specific findings (compare AR 805 for example, with AR 800-805 generally)—are not supported by the medical evidence discussed herein, including Dr. Ajit's own exam findings, which often reflect scant significant data, let alone anything of an order of magnitude on par with the extensive limitations described in the doctor's

functional assessments (see generally AR 644-673, 833-869).
AR 28.

Plaintiff argues, "the format of Dr. Ajit's opinion does not render it a simple check-the-box conclusion that lacks sufficient explanation." (JS at 24.) Dr. Ajit's opinion is not conclusory because "Dr. Ajit reiterated the diagnosis of bulging discs and disc extrusion, the MRI, injections, and many years of disabling symptoms. In addition, as noted above, Dr. Ajit treated Plaintiff, evaluated his pain management, and referred him to specialists, among other incidents of treatment in the record (AR 800-805)." (JS at 11.)

The ALJ may discredit treating physicians' opinions that are conclusory, brief, or unsupported by medical evidence. Batson v. Comm'r of SSA, 359 F.3d 1190, 1195 (9th Cir. 2004); Matney, 981 F.2d at 1019. See also Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected doctor's opinion because they were check-off reports that did not contain any explanation of the bases of their conclusions); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports).

A treating physician's opinion, however, is not conclusory or unsupported where treating records comprise a significant portion of the record and consistently speak to the claimant's impairments. Kassebaum v. Comm'r of SSA, 420 F. App'x 769, 773 (9th Cir. 2011). Also, a check-box report by a treating physician is "entitled to weight that an otherwise unsupported and unexplained check-box form would not merit" due to the physician's significant experience with the claimant and supporting records. Garrison, 759 F.3d at 1013; see also Esparza v. Colvin, 631 F. App'x 460, 462 (9th Cir. 2015) ("Although the treating physician's opinions were in the form of check-box questionnaires, that is not a proper basis for rejecting an opinion supported by treatment notes.").

Moreover, the ALJ's finding that the treating physician's assessment is not supported by medical evidence must itself be supported by the administrative

24

record and explicit findings; otherwise, the ALJ does not provide "specific and legitimate reasons supported by substantial evidence in the record" for rejecting the treating physician's opinion. Jones v. Astrue, 503 F. App'x 516, 517 (9th Cir. 2012) (finding error where an ALJ rejected a treating physician's report on the ground that "it is unsupported by objective findings and is inconsistent with the claimant's own reports of her activities," because it was not clear what specifically made the record insufficient to support the opinion); see also Orn, 495 F.3d at 634 ("The primary function of medical records is to promote communication and recordkeeping for health care personnel—not to provide evidence for disability determinations. We therefore do not require that a medical condition be mentioned in every report to conclude that a physician's opinion is supported by the record.").

Dr. Ajit's Medical Source Statement generally appeared in the form of a check-box report, but Dr. Ajit supported her check-box conclusions with her diagnosis of Plaintiff—confirmed by MRI imaging—and Plaintiff's treatment regimen. AR 805. Specifically, Dr. Ajit opined, "[Plaintiff is] unable to sit, stand, or walk for long periods of time due to bulging discs in lumbar spine at L3/L4, L4/L5 and disc extension as L5/S1, all confirmed by MRI. Has been going for epidural injections for the past several years." Id. In turn, Dr. Ajit's diagnoses are supported by years of treatment and accompanying records. With these supporting records, Dr. Ajit's medical opinion warrants more weight than an unexplained, unsupported check-the-box form. Thus, the format of Dr. Ajit's Medical Source Statement does not constitute a specific and legitimate reason to discount her medical opinion.

Moreover, the ALJ did not support with medical evidence his finding that Dr. Ajit's assessment is unsupported by medical evidence. The ALJ found:

> [P]rohibitively restrictive assessments such as those provided by Dr. Ajit are
> not well supported by the clinical data, progress notes, and overall record—
> which, as detailed above and below, show that the claimant's conditions are

1  |  generally managed with conservative measures at most—nor are they
2  |  consistent with other opinion evidence in the file, including the assessments
3  |  of the State Agency medical and psychological consultants (see AR 107-115,
4  |  AR 117-127)—not to mention that of the consultative examiner ….

AR 28.  In other words, the ALJ found Dr. Ajit's opinion unsupported by the overall record for two reasons: (1) Plaintiff's condition is managed with "conservative" epidural injections, and (2) the state consultants offered contradictory assessments of Plaintiff's functional capabilities.  Both rationales have been discussed and rejected in previous sections.

                    e.  <u>Reason Five</u>: Lack of Reliability and Neutrality.

The ALJ found as follows:

Dr. Ajit's opinions at least arguably appear to be tainted by the claimant's objective to obtain a report that states that he is disabled in order to receive benefits or other special consideration in this and/or another context (<u>see</u>, for example, AR 646 (Dr. Ajit notes claimant was "advi[s]ed [about] short term disability"); <u>see also</u>, for example, AR 843 (Dr. Ajit notes that "[l]etter [was] written for [the claimant] to be excused from jury duty")).  In effect, Dr. Ajit, for example, in offering a "disability"-related opinion, appears to be actively assisting the claimant's attempt to obtain benefits or other consideration, rather than simply treating him or offering an objective opinion corroborated by treatment notes.  Such opinions lack neutrality and reliability.

AR 29.

Plaintiff argues, "This criticism, without more, would require any treating physician or other provider who is asked to certify a patient's inability to work (or to sit for hours on end at jury duty) be disqualified from opining about their patient's limiting pain."  (JS at 12.)  Plaintiff also argues that the ALJ provided no evidence to support his assumption.  (<u>Id.</u>)

    "The purpose for which medical reports are obtained does not provide a

26

legitimate basis for rejecting them.  An examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner." Lester, 81 F.3d at 832 (citing Ratto v. Secretary, 839 F.Supp. 1415, 1426 (D.Or. 1993) ("The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits.")). See also Booth v. Barnhart, 181 F.Supp.2d 1099, 1105-06 (C.D. Cal. 2002) ("the ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding").  "This skepticism of a treating physician's credibility flies in the face of clear circuit precedent." Reddick, 157 F.3d at 726 (citing Lester, 81 F.3d at 833).

To reject an opinion on this basis, the ALJ must cite actual evidence demonstrating impropriety.  Lester, 81 F.3d at 832 (citing Ratto, 839 F.Supp. at 1426).  The Ninth Circuit has found a determination of untrustworthiness permissible, for example, when the medical opinion was obtained solely for the hearing, there was no objective medical basis for the doctor's opinion, and the report was inconsistent with the doctor's own treatment notes.  Saelee v. Chater, 94 F.3d 520, 523 (9th Cir. 1996) (per curiam).

Here, the ALJ did not provide actual evidence to support his determination of impropriety.  Advising a patient about short-term disability and writing a letter to excuse a patient from jury duty is consistent with a legitimate belief that a patient is functionally limited.  Additionally, these notes appear in the records of only two visits; it does not seem likely that Plaintiff saw Dr. Ajit consistently for years to obtain a "disability-related opinion."  This does not constitute a specific and legitimate reason for discounting the medical opinion of Dr. Ajit.

> f.  The ALJ Has Not Provided Specific and Legitimate Reasons to Discount Dr. Ajit's Opinion.

In sum, the reasons set forth by the ALJ for discounting the medical opinion of Plaintiff's treating physician, Dr. Ajit—(1) contradicted by three state medical

27

sources, (2) lack of specialization, (3) inconsistency with treating notes and conservative treatment, (4) use of check-the-box form and lack of support, and (5) untrustworthiness—do not constitute specific and legitimate reasons supported by substantial evidence in the record to discount Dr. Ajit's medical opinion. It is unclear that Dr. Ajit's opinion ever lost its presumptive controlling weight. Her opinions were contradicted only by (1) two non-examining doctors who relied on Dr. Ajit's own records and (2) a CE who performed a five-minute examination with poor English skills and submitted an incomplete report. In contrast, years of treatment records and objective medical tests corroborated Dr. Ajit's medical opinion, and the record is devoid of any evidence of malingering.

### 3. Dr. Ajit's and Ms. Rhodes' Anxiety Findings.

Plaintiff testified that he suffers from mental impairments including anxiety, depression, and obsessive-compulsive disorder ("OCD"). AR 79-80. Plaintiff further testified that Dr. Ajit prescribes Plaintiff medication for his anxiety and OCD, and Plaintiff regularly sees Licensed Marriage and Family Therapist ("LMFT"), Angela Rhodes, M.S., to cope with these impairments and the stress of his job situation. Id.

Dr. Ajit did not provide any formal or informal medical opinion regarding Plaintiff's mental functional capacity, but her treatment records indicate that she diagnosed Plaintiff with anxiety and OCD and consistently prescribed him medication. AR 800-805, 833-856. Ms. Rhodes also did not provide a functional assessment, but she did provide a letter describing her treatment of Plaintiff. AR 870. Non-treating, non-examining state agency psychologists David Deaver, Ph.D., and Peter Bradley, Ph.D., both reviewed the record and opined that Plaintiff has no severe mental impairment and his anxiety does not restrict his daily living. AR 111, 122.

In assessing Plaintiff's mental impairments, the ALJ gave "great weight" to the state agency psychologists, "who indicated that the claimant's mental

impairment is 'Non Severe' … and causes no significant limitations whatsoever ….

[T]hey reviewed evidence—some of which was likely unavailable to other

sources—in the context of their special training in applying the Social Security

disability rules and regulations…." AR 29-30. The ALJ considered the

assessments of the state agency psychologists "essentially uncontroverted by any

other opinion evidence" and "consistent with the overall record[.]" Id. The ALJ

explained that the opinions of the state agency psychologists are "uncontroverted"

because:

> [T]he treatment records regarding the claimant's mental impairment provide
> even less support for claims of disabling limitations, as they indicate that this
> issue has been managed with little more than medications (apparently
> prescribed by Dr. Ajit) and routine counseling, the latter of which, as noted
> above, the claimant's therapist reports has contributed to the fact that the
> claimant "has made progress in reducing his depression [and] is continuing to
> work on self acceptance and reducing anxiety" (AR 870).

AR 31. The ALJ found that Ms. Rhodes' letter was "not clearly incompatible with

the conclusion that the claimant has not had any significant limitations in his ability

to perform the mental aspects of work …." AR 30 n.2.

Plaintiff argues the ALJ erred in relying on the state agency psychologists in

assessing Plaintiff's mental RFC and considering their opinions "uncontroverted"

without "explain[ing] how or why this was so (AR 29-30)." (JS at 12-13.) Further,

Plaintiff contends the ALJ erred in discounting the opinions of Dr Ajit and Ms.

Rhodes regarding Plaintiff's mental impairments because "the ALJ incorrectly

stated that Plaintiff had 'quite good range of activities of daily living'…." (JS at

13.)

However, as the ALJ explicitly recognized, the opinions of the state agency

psychologists, both of whom opined that Plaintiff had no significant mental

functional limitations, constitute the only medical opinions in the record explicitly

addressing Plaintiff's mental functional capabilities. AR 30. Ms. Rhodes and Dr. Ajit did not provide any formal or informal medical opinions on how Plaintiff's mental functional limitations impede his ability to work. Ms. Rhodes' letter indicates that she conducted psychotherapy with Plaintiff to reduce "his depression, anxiety, and negative self-talk" and Plaintiff has "made progress in reducing through his depression" while he continues to "work on self-acceptance and reducing anxiety." AR 870. It does not address how Plaintiff's mental impairments impede his ability to work, if at all. Likewise, Dr. Ajit diagnosed Plaintiff with anxiety and OCD and prescribed him medication but did not offer any opinion on how Plaintiff's mental impairments affect his functional capabilities. See AR 800-805.

These opinions do not oppose those of the state consultants. In other words, the ALJ can accept that Plaintiff has OCD, anxiety, and depression—as reflected in the opinions of Dr. Ajit and Ms. Rhodes—while also accepting the ultimate conclusions of the state consultants that these impairments do not cause any significant functional limitations. The ALJ explained as much. See AR 31. Thus, the ALJ did not err in failing to give specific, legitimate reasons for "rejecting" opinions by Dr. Ajit and Ms. Rhodes because neither source provided any formal or informal assessment of how Plaintiff's mental impairments limit his functionality; instead, he explained their consistency with the opinions of the state consultants.

### 4. Exertional Limitations Caused by Plaintiff's Obesity.

In assessing Plaintiff's RFC, the ALJ found, "while objective data such as blood pressure readings and height and weight statistics generally confirm the claimant's hypertension and obesity, there is no significant sign of end organ damage or other pertinent complications associated with these conditions, let alone anything to corroborate the inability to do light-level work …." AR 27. The ALJ also noted, "he does not appear to have had any significant operations in the period at issue, such as a gastric bypass procedure to treat his obesity …." AR 31.

Plaintiff contends that, despite the restriction to light work, the ALJ erred in failing to account adequately for exertional limitations caused by Plaintiff's obesity. Plaintiff argues, "it is clear that Plaintiff's struggle to maintain a healthy weight impacted his lower back pain, as well as his hypertension. … Plaintiff's obesity has a quantifiable negative impact on his RFC. The ALJ should have developed the record further regarding the impact of Plaintiff's weight on his back pain, in addition to the equally obvious relationship between sleep apnea and weight." (JS at 12.) Plaintiff also contends, "The Ninth Circuit held that pursuant to S.S.R. 02-1p,[10] an ALJ must consider obesity in determining an RFC based on the information in the case record." (JS at 12, citing <u>Burch</u>, 400 F.3d at 683; <u>Celaya v. Halter</u>, 332 F.3d 1177 (9th Cir. 2003).)

In <u>Burch v. Barnhart</u>, however, the Ninth Circuit rejected the claimant's contentions that the ALJ erred in failing to consider "the interactive effects that obesity has on her other impairments and the combined effect of those impairments." 400 F.3d at 681-82. The Ninth Circuit distinguished <u>Celaya v. Halter</u>—there, the claimant appeared <u>pro se</u> and the ALJ was obligated to develop the record further regarding her obesity. <u>Id.</u> at 682. In contrast, the <u>Burch</u> claimant was represented by counsel, did not testify or present evidence that her obesity impaired her ability to work, and did not set forth evidence of any functional limitations caused by her obesity that the ALJ failed to consider. <u>Id.</u> 682-84. Still,

---

[10] The ALJ explicitly considered Plaintiff's obesity pursuant to Social Security Ruling 02-1p in assessing whether Plaintiff provided evidence of a listing-level condition. The ALJ considered whether Plaintiff's obesity "might, by itself, be equivalent in severity to a listed condition, as well as whether it could elevate other impairments to listing-level significance." AR 25. The ALJ found, "there this no medical evidence that either alternative applies" because there is "no evidence that any source explicitly linked the claimant's obesity to any specific alleged functional limitation …. Moreover, the State Agency medical consultants had evidence of the claimant's obesity before them and did not find a listing-level condition …." <u>Id.</u>

31

the ALJ expressly considered the claimant's obesity in finding she had the RFC to perform light work—this sufficed. Id. at 684.

This case is more akin to Burch than Celaya. Plaintiff was represented by counsel. During the hearing, Plaintiff's counsel developed Plaintiff's testimony on a range of impairments—such as his allergies, his anxiety and OCD, and his stomach, sleep, back, and wrist issues. AR 65-90. However, neither Plaintiff nor his counsel mentioned Plaintiff's obesity or offered evidence that his obesity aggravates the mentioned impairments. Plaintiff has not pointed to any evidence in the record that the ALJ failed to consider showing his obesity caused functional limitations beyond those recognized by the RFC. As in Burch, based on the record and the hearing, the ALJ was under no further obligation to develop the record on Plaintiff's obesity and his consideration was legally sufficient.

## 5. The ALJ's RFC Conclusion.

The ALJ concluded that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and that Plaintiff can: occasionally lift and/or carrying of 20 pounds, frequently lift and/or carry 10 pounds, sit, stand, and/or walk for six hours in an eight-hour day, occasionally climb ramps and stairs (but never ladders or scaffolds), and occasionally stoop, kneel, crouch and crawl. AR 25. Additionally, the ALJ found Plaintiff must avoid "concentrated" exposure to dust, fumes, and poor ventilation. Id. The ALJ determined, "a restriction to light-level work is most consistent with the claimant's medical records, activities of daily living, treatment history, and other data discussed herein—and the opinion evidence in this case has been given significant weight to the extent that it is in keeping therewith." AR 29.

The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Parra, 481 F.3d at 746. Because the ALJ did not provide specific and legitimate reasons supported by substantial evidence to discount the medical

opinion of Dr. Ajit, this Court cannot conclude that the assessed RFC is free of prejudicial legal error.  At the hearing, the VE testified that, considering Dr. Ajit's Medical Source Statement, Plaintiff could not complete his past work or any other work in the national economy.  AR 103-104.

**B. ISSUE THREE: The ALJ's Consideration of Third-Party Testimony.**

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 404.1527(a)(1).  Certain medical professionals are not considered an "acceptable medical source" and are not entitled to the deference afforded an "acceptable medical source."  20 C.F.R. § 404.1513(a);[11] see Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  Only licensed physicians and certain other qualified specialists—including certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists—are considered "acceptable medical sources."  Id. (citing 20 C.F.R. § 404.1513(a), (d)).

Evidence from sources that do not qualify as "acceptable medical sources" must still be considered:

> [T]here is a requirement to consider all relevant evidence in an individual's
> case record, the case record should reflect the consideration of opinions from
> medical sources who are not 'acceptable medical sources' and from 'non-
> medical sources' who have seen the claimant in their professional capacity.
> ... [T]he adjudicator generally should explain the weight given to opinions
> from these 'other sources,' or otherwise ensure that the discussion of the

---

[11] In this section, any citation to 20 C.F.R. § 404.1513 refers to the version of the regulation in effect from September 3, 2013 to March 26, 2017—the period during which Plaintiff filed his claim.

evidence in the determination or decision allows a claimant or subsequent
reviewer to follow the adjudicator's reasoning, when such opinions may have
an effect on the outcome of the case.

S.S.R. 06–03p, 2006 WL 2329939; <u>see</u> 20 C.F.R. § 404.1527(b) ("In determining
whether you are disabled, we will always consider the medical opinions in your
case record together with the rest of the relevant evidence we receive."); 20 C.F.R.
§ 404.1527(f)(1) ("Opinions from medical sources who are not acceptable medical
sources and from nonmedical sources may reflect the source's judgment about
some of the same issues addressed in medical opinions from acceptable medical
sources. Although we will consider these opinions using the same factors … not
every factor for weighing opinion evidence will apply in every case ….").

"The ALJ may discount testimony from these 'other sources' if the ALJ
'gives reasons germane to each witness for doing so.'" <u>Molina</u>, 674 F.3d at 1111
(citations omitted).

Plaintiff argues, "This record includes written testimony from two medical
providers who are not considered acceptable medical sources (AMS) under the
regulations. The ALJ erred in failing to consider this lay testimony." (JS 36.)
Specifically, Plaintiff contends that the ALJ failed to consider the written testimony
of (1) Dr. Glandorf, Plaintiff's treating chiropractor, and (2) Ms. Rhodes, Plaintiff's
therapist.

**1. Dr. Glandorf.**

The ALJ did not explicitly discuss Dr. Glandorf in his findings. The
Commissioner contends, however, the fact that the ALJ cited broadly to Dr.
Glandorf's treatment records reflects the ALJ's consideration of Dr. Glandorf's
opinion. (JS at 38.) The Commissioner argues, Dr. Glandorf did not "provide[]
any assessment of Plaintiff's functional limitations. Plaintiff merely refers to
treatment records from chiropractor Glandorf, and Plaintiff admits that the ALJ
referred to exhibits that reflected this treatment, indicating that the ALJ did, indeed,

34

consider these records." (Id.)

While Dr. Glandorf did not complete a formal functional assessment of Plaintiff's for the Social Security Administration's Office of Disability Adjudication and Review, he did complete a Disability Determination Services Range of Motion form in 2013 for Dr. Ajit, indicating that Plaintiff only has a normal range of motion in his ankles. AR 644. Also, Dr. Glandorf's treatment notes include informal assessments of Plaintiff's functional capabilities. For example, Dr. Glandorf repeatedly opined that sitting and standing for extended periods of time increases Plaintiff's pain, as do rotational movements; Plaintiff especially cannot stand on hard surfaces for prolonged periods of time. See, e.g., AR 412, 417, 424, 426, 433, 436, 439, 441,452, 454, 590. This contrasts with the ALJ's finding that Plaintiff can sit, stand, and/or walk for six hours in an eight-hour day (AR 25) and supports Dr. Ajit's finding that Plaintiff can sit for a total of four hours, stand for a total of two hours, and walk for a total of one hour in an eight-hour day, and can only sit, stand, or walk for twenty minutes at one time. AR 801.

As such, Dr. Glandorf provided informal functional assessments, which the ALJ implicitly rejected by discounting Dr. Ajit's opinion as unsupported by the record. The citations to Dr. Glandorf's treatment notes in the ALJ's decision do not suffice as a rationale of this rejection. Dr. Glandorf's treatment notes comprise nearly 300 pages—or one third of the entire record—reflecting a decade of treatment. The ALJ cited to Dr. Glandorf's notes for the proposition that Plaintiff wishes to avoid surgery (AR 31); that Plaintiff underwent nasal surgery a decade ago (id.); and that there is objective evidence confirming Plaintiff's spinal impairments. AR 27. The ALJ also included Dr. Glandorf's treatment records in sweeping citations: the ALJ cited to AR 402-878 for the proposition that Plaintiff has undergone only modest treatment (AR 30) and to AR 402-681, 688-799, and 871-878 for the proposition that Plaintiff's physical and mental examination findings are unremarkable. AR 27. Dr. Glandorf's assessments are not cited

35

elsewhere and not explicitly discussed at all. As such, the ALJ erred in failing to provide any reasons (germane or otherwise) for discounting Dr. Glandorf's assessment.

### 2. Ms. Rhodes.

The ALJ addressed Ms. Rhodes' letter in a footnote. AR 30. The ALJ acknowledged, Ms. Rhodes "noted that the claimant 'has made progress in reducing his depression [and] is continuing to work on self acceptance and reducing anxiety' (AR 870). While not a formal functional assessment, Ms. Rhodes' opinions are frankly not clearly incompatible with the conclusion that the claimant has not had any significant limitations in his ability to perform the mental aspects of work at any time material hereto and I give them accordingly significant weight to the extent that they are consistent with the residual functional capacity in Finding # 5 in keeping herewith." AR 30 n.2.

As discussed earlier, Ms. Rhodes did not provide an assessment of Plaintiff's mental functioning capabilities; instead, her letter explains that Plaintiff has been attending psychotherapy and has been making progress in reducing his depression and opening himself to new ideas. AR 870. The ALJ did not discount Ms. Rhodes' opinion; in fact, he found the letter consistent with the opinions of the state consultants and gave it "significant weight" to the extent it supports the ultimate RFC finding, which included no mental restrictions. AR 30 n.2. The ALJ did not need to provide germane reasons for discounting Ms. Rhodes' opinion, because he did not discount it.

## C. WHETHER TO REMAND FOR FURTHER PROCEEDINGS OR WITH INSTRUCTIONS TO CALCULATE AND AWARD BENEFITS.

"The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." Sprague, 812 F.2d at 1232. "[I]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded" for further proceedings.

36

Garrison, 759 F.3d at 1019 (quoting Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981)). Conversely, a court will remand for the calculation and award of benefits "when it is clear from the record that a claimant is entitled to benefits …." Id. Specifically, each component of the following standard must be satisfied to remand with instructions to calculate and award benefits: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand[.]" Id. at 1020.

Here, the first component of this standard is not satisfied. The administrative record contains a number of gaps. Specifically, it does not contain the complete, reliable assessment of an examining state agency physician. The administrative record can be developed by ordering the thorough medical examination of Plaintiff by a qualified state agency physician and ensuring that the report from this examination is included in full.

## VI.

## CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered REMANDING the decision of the Commissioner denying benefits.


DATED:  November 08, 2018

_____
KAREN E. SCOTT
United States Magistrate Judge